IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

OMAR VALDEZ,

    Petitioner,

vs.                                                          Civil No. 14-cv-936-DRH-CJP

JACQUELINE LASHBROOK,

    Respondent.

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

In 2007, a jury in Cook County, Illinois, convicted Omar Valdez of the first degree murder of Mario Flores. He was sentenced to sixty years imprisonment. He filed a petition for habeas relief pursuant to 28 U.S.C. §2254 (Doc. 1), raising the following grounds:

1. The trial court erred in finding that there was probable cause to arrest petitioner.

2. The evidence was insufficient to prove petitioner guilty beyond a reasonable doubt.

3. The trial court erred in denying petitioner a new trial for the above two reasons.

4. The sixty year sentence was excessive under the Illinois constitution and an Illinois statute.

### Relevant Facts

This summary of the facts is derived from the detailed description by the

Appellate Court of Illinois, First District, in its Rule 23 Order affirming petitioner's conviction on direct appeal. A copy of that order is attached to Doc. 13 as Exhibit 1.[1] The state court's factual findings are presumed to be correct unless rebutted by clear and convincing evidence, which petitioner has not done. 28 U.S.C. §2254(e).

The victim, Mario Flores, was sitting, unarmed, in a parked car on 51st Avenue in Cicero, Illinois, on February 15, 2004. He was shot twelve times at around 8:30 a.m.

No one testified that they saw the shooting. However, Cicero Police Commander James Malinski was on-duty and was speaking with Jose Oquendo on 51st Avenue at about 8:34 a.m. on February 15, 2004. He heard gunshots behind him. Commander Malinski and Jose Oquendo saw a person dressed in black, carrying a gun and running. Commander Malinski pursued the running man in his squad car. Jose Oquendo saw the man get into a black Chrysler. The man drove towards Oquendo, and Oquendo was able to see his face. Oquendo wrote the license number of the man's car down on his hand. Oquendo lost sight of the man, but went to the area of 18th Street and 51st Avenue, where he found the bleeding victim and Commander Malinski. He gave Commander Malinski the license number, and Commander Malinski learned that the number matched a Chrysler owned by defendant. Commander Malinski broadcast the license number and a description of the vehicle and the driver over the Illinois State Police Emergency Radio Network.

---

[1] The Court uses the document, exhibit and page numbers assigned by the CM/ECF system.

Two other witnesses in the area, Carmen Oquendo (Jose Oquendo's sister) and Oscar Lopez, saw a man dressed in black and wearing a mask, running, after they heard gunshots. Carmen Oquendo saw that the running man was carrying a gun and was being chased by Oscar Lopez. Oscar Lopez said he chased the man after hearing the gunshots. The man was wearing a mask, but he lifted the mask over his head. All three witnesses testified that they were able to see his face.

About 45 minutes after the shooting, petitioner was pulled over in his black Chrysler by Officer Hendrix. Officer Hendrix had heard a dispatch describing the suspect and his vehicle. When petitioner was searched at the Cicero lockup, he was wearing black pants, a black jacket, and a black hoodie. He had a black ski mask between his pants and his underwear.

At about 11:00 a.m. on the same day, witnesses Jose Oquendo, Carmen Oquendo and Oscar Lopez viewed a lineup and separately identified petitioner as the person they had seen running that morning.

Other facts will be discussed as necessary in the analysis of petitioner's arguments.

## State Court Proceedings

On direct appeal, Valdez raised the following points:

1. He was arrested without probable cause.

2. The state failed to prove him guilty beyond a reasonable doubt.

3. The trial court erred in denying his motion for new trial for the above two reasons.

4. His sixty year sentence was excessive under the Illinois constitution and an Illinois statute.

Ex. 2.

After his conviction was affirmed, Valdez filed a pro se Petition for Leave to Appeal which raised the points that had been raised in the Appellate Court. Ex. 5. The Supreme Court denied the PLA. Ex. 6.

In September 2010, petitioner filed a pro se postconviction petition which raised a number of issues that are not relevant here. The petition was summarily dismissed. On appeal, appointed counsel argued that trial counsel had been ineffective in failing to advise petitioner that he was subject to an enhanced sentence. Ex. 8. The Appellate Court affirmed. Ex. 6. Counsel filed a PLA arguing that the Supreme Court should clarify the requirements for an indigent prisoner to state an ineffective assistance claim in a pro se postconviction petition. Ex. 13.

The Supreme Court denied the PLA in March 2014. Ex. 14.

## Law Applicable to §2254 Petition

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act, known as the AEDPA. "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 122 S.Ct. 1843, 1849 (2002).

Habeas is *not* yet another round of appellate review. 28 U.S.C. §2254(d)

restricts habeas relief to cases wherein the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

A judgment is "contrary to" Supreme Court precedent if the state court "contradicts the governing law set forth in [Supreme Court] cases." *Coleman v. Hardy*, 690 F.3d 811, 814 (7th Cir. 2012). A state court decision is an "unreasonable application of" clearly established law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The scope of federal review of state court decisions on habeas is "strictly limited" by 28 U.S.C. § 2254(d)(1). *Jackson v. Frank*, 348 F.3d 658, 661 (7th Cir. 2003). The unreasonable application standard is "a difficult standard to meet." *Id.*, at 662. Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, the state court application must be "something like lying well outside the boundaries of permissible differences of opinion." *Id.*, at 662 (internal citation omitted).

Respondent concedes that the petition was timely filed and that petitioner has exhausted state remedies. She does not contend that any of petitioner's grounds are procedurally defaulted.

## Analysis

**1.     Noncognizable Claims (Grounds 1 & 4)**

The first ground for habeas relief, that there was no probable cause to arrest petitioner, cannot be considered on habeas review.

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 96 S. Ct. 3037, 3046 (1976). In determining whether an opportunity for full and fair litigation was provided, the habeas court does not focus on the correctness of the state court's decision, but rather on whether the state courts adequately addressed the Fourth Amendment claim. *Cabrera v. Hinsley*, 324 F.3d 527, 530-32 (7th Cir. 2003). A petitioner has received a full and fair hearing if "the state court heard the claim, looked at the right body of case law, and rendered an intellectually honest decision." *Monroe v. Davis*, 712 F.3d 1106, 1114 (7th Cir. 2013).

Here, petitioner filed a motion to quash arrest and suppress evidence, and the trial court held a hearing on the motion. The trial court denied the motion. The Appellate Court considered the correctness of that decision on direct appeal. See, Ex. 1.

Petitioner does not argue that the state courts did not give him an opportunity for full and fair litigation of his Fourth Amendment claim. Rather,

his argument is that the state court reached the wrong decision on his motion to suppress. Even if he were correct, that would not be enough for habeas relief:

> It takes an "egregious error" to imply that the state judges have closed their ears and minds to argument—and it is the latter circumstance, not the error itself, that would justify relief under *Stone*. Even an "egregious error" thus is not enough to support a writ of habeas corpus (that's what it means to say that the exclusionary rule does not apply on collateral attack); a blunder, no matter how obvious, matters only in conjunction with other circumstances that imply refusal by the state judiciary to take seriously its obligation to adjudicate claims under the fourth amendment.

*Hampton v. Wyant*, 296 F.3d 560, 564 (7th Cir. 2002).

Petitioner has not – and cannot – demonstrate that the state courts failed to give him an opportunity for full and fair litigation of his Fourth Amendment claim. Therefore, the first ground cannot be considered on habeas review.

The fourth ground presents only a state law challenge to petitioner's sentence. He argues here, as he argued in state court, that his sentence was excessive under the Illinois constitution and an Illinois statute. See, Doc. 1, Ex. 1, pp. 54-55.

28 U.S.C. §2254 affords habeas relief only where a petitioner's custody violates *federal* law. *Swarthout v. Cooke*, 131 S.Ct. 859, 861 (2011), citing *Estelle v. McGuire*, 112 S. Ct. 475, 480 (1991). Petitioner's excessive sentence claim is based on state law. Claims of error in the application of state sentencing laws are not cognizable on habeas review. *Dellinger v. Brown*, 301 F.3d 758, 764 (7th Cir. 2002).

**2.    Sufficiency of the Evidence (Ground 2)**

Petitioner's claim that the evidence was insufficient to convict him beyond a reasonable doubt presents a federal claim that is cognizable on habeas review.

This claim was considered by the Appellate Court on direct appeal. The state court set forth the applicable standard, i.e., "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Doc. 13, Ex. 1, p. 13. The state court summarized the relevant evidence, including (1) the testimony of Oscar Lopez, Jose Oquendo, and Carmen Oquendo; (2) the identification of petitioner in a line-up by those three witnesses; (3) Commander Malinski's testimony, including that the license number provided by Jose Oquendo belonged to petitioner's Chrysler; (4) Officer Hendrix' testimony that he saw petitioner driving the Chrysler with that license number and arrested him; (5) testimony that petitioner was attempting to conceal a mask similar to the one described by the witnesses by putting it down his pants; and (6) evidence that the victim was shot 12 times. The court concluded that this evidence was sufficient to prove Valdez guilty beyond a reasonable doubt, rejecting his claim that the evidence was only circumstantial and that the state had not proved a motive. Doc. 13, Ex. 1, pp. 14-16.

The question for this Court on habeas review is whether the state court's decision was contrary to or an unreasonable application of applicable Supreme Court precedent. 28 U.S.C. §2254(d).

The applicable Supreme Court precedent, *Jackson v. Virginia*, 99 S.Ct.

2781 (1979), holds that, viewed in the light most favorable to the state, the evidence is sufficient to support a conviction so long as any rational trier of fact could find the essential elements of the offense to have been proved beyond a reasonable doubt. The state court decision was not "contrary to" *Jackson* because the state court correctly identified the standard for resolution of a sufficiency of the evidence claim. It is immaterial that the state court did not cite *Jackson*. *Early v. Packer*, 123 S. Ct. 362, 365 (2002).

This Court must determine whether the state court's application of *Jackson* was unreasonable. The *Jackson* standard is itself "rigorous." *Jones v. Butler*, 778 F.3d 575, 581 (7th Cir. 2015). Further, a *Jackson* claim must clear a "high bar" on habeas review because review is doubly deferential; the state court must defer to the jury's responsibility to weigh the evidence, and the federal habeas court may overturn the state court's decision only if it was "objectively unreasonable." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012).

The "unreasonable application" standard is intentionally difficult to meet; this is because habeas corpus is meant to be a "guard against extreme malfunctions in the state criminal justice systems," and not a vehicle for correction of ordinary errors. *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(internal citations omitted). Under this high standard, a state court's decision is reasonable, even if incorrect, so long as "fairminded jurists could disagree." *McDaniel v. Polley*, 847 F.3d 887, 893 (7th Cir. 2017)

Here, the state court's decision was not objectively unreasonable. In assessing the sufficiency of the evidence, the evidence must be considered together, as "the whole might be greater than the sum of the parts." *Trejo v. Hulick*, 380 F.3d 1031, 1032 (7th Cir. 2004). The evidence established that three witnesses, plus Commander Malinski, saw a man running with a gun from the area where multiple shots were fired, the running man took off in a car that belonged to petitioner, petitioner was arrested while driving that car shortly thereafter, petitioner had concealed in his pants a mask like the mask seen by the witnesses, and the three witnesses picked him out of a line-up later that same morning.

The state court's conclusion that this evidence was sufficient is certainly within the range of acceptable opinion. See, e.g., *Trejo v. Hulick*, 380 F.3d 1031, 1034 (7th Cir. 2004); *Cabrera v. Hinsley*, 324 F.3d 527, 533-534 (7th Cir. 2003). Again, the standard for demonstrating that a state court unreasonably applied Supreme Court precedent is demanding; "a petitioner's claim fails if 'fairminded jurists could disagree on the correctness of the state court's decision.'" *Johnson v. Jaimet*, ___ F.3d. ___, 2017 WL 1174399, at *4 (7th Cir. Mar. 30, 2017).

Further, the elements of a state crime and determination of what is required to prove the elements are questions of state law. See, *Bates v. McCaughtrey*, 934 F.2d 99, 102–03 (7th Cir.1991). Here, the state court noted that Illinois law permits a conviction based entirely on circumstantial evidence, that intent can be proved by circumstantial evidence, and that the state is not

required to prove motive as an element of murder. Doc. 13, Ex. 1, pp. 15-16. Petitioner's argument here rests in part on his state law arguments about circumstantial evidence and lack of evidence of motive, but those arguments cannot be considered on habeas review.

**3.     Failure to Grant New Trial (Ground 3)**

This argument is premised on the arguments set forth in the first two grounds. See, Doc. 1, Ex. 1, p. 54. This ground is rejected for the reasons set forth above.

## Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2).

In order for a certificate of appealability to issue, petitioner must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong." See, *Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000); *Buck v. Davis*, 137 S. Ct. 759, 773 (2017).

Here, no reasonable jurist would find it debatable whether this Court's rulings were correct. Accordingly, the Court denies a certificate of appealability.

## Conclusion

Omar Valdez' petition for habeas relief under 28 U.S.C. §2254 **(Doc. 1)** is **DENIED**. This cause of action is **DISMISSED WITH PREJUDICE**. The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

**DATE: April 12, 2017**

Digitally signed by Judge David R. Herndon
Date: 2017.04.12 18:00:46 -05'00'

**UNITED STATES DISTRICT COURT**

## Notice

If petitioner wishes to appeal the dismissal or denial of his petition, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(1)(A). A motion for leave to appeal in forma pauperis should set forth the issues petitioner plans to present on appeal. See Fed. R. App. P. 24(a)(1)(C).

A certificate of appealability is required to appeal from the dismissal or denial of a §2254 petition. Rule 11 of the Rules Governing §2254 Cases requires that, when entering a final order adverse to the petitioner, the district court must issue or deny a certificate of appealability. Here, the Court has denied a certificate. In order to appeal the dismissal or denial of his petition, petitioner must obtain a certificate of appealability from the court of appeals.

Petitioner cannot appeal from this Court's denial of a certificate of appealability. Further, a motion to reconsider the denial does not extend the time for appeal. See, Rule 11(a).

Petitioner is further advised that a motion to alter or amend the judgment filed pursuant to Federal Rule of Civil Procedure 59(e) must be filed no later than 28 days after the entry of the judgment—a deadline that cannot be extended. A proper and timely Rule 59(e) motion may toll the thirty day appeal deadline. Other motions, including a Rule 60 motion for relief from a final judgment, order, or proceeding, do not toll the deadline for an appeal.